470 F.3d 143
 UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 1776, Appellant
v.
EXCEL CORPORATION.
United Food & Commercial Workers, Union Local 1776
v.
Excel Corporation
Cargill Meat Solutions, (f/k/a Excel Corporation), Appellant.
 No. 05-2091.
 No. 05-2259.
 United States Court of Appeals, Third Circuit.
 Submitted Under Third Circuit LAR 34.1(a) November 7, 2006.
 Filed December 1, 2006.
 
 Robert D. Mariani, Scranton, PA, Attorney for Appellant/Cross-Appellee United Food & Commercial Workers, Union Local 1776.
 Anneliese Wermuth, Joseph E. Tilson, Meckler, Bulger & Tilson, Chicago, IL, Vincent Candiello, Post & Schell, Harrisburg, PA, Attorneys for Appellee/Cross-Appellant Excel Corporation.
 Before SLOVITER, CHAGARES, and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 The issue on appeal is whether an employer has satisfied an arbitrator's award when it pays the employee back wages and simultaneously terminates the employee a second time for conduct independent of the first termination.[1] This is a novel issue for this court.
 
 
 2
 The District Court held that the employee must be reinstated pursuant to the initial arbitral award but that the employer was free to terminate the employee a second time. The employee appeals through his Union. The employer cross appeals. We hold that, given the circumstances of this case, the employer's payment of back pay acted as an effective reinstatement and the employer was free to terminate the employee a second time based on independent grounds, pending a second arbitration.
 
 I.
 
 3
 The material facts of this case are not in dispute. On October 31, 2002, the employer, Excel Corporation, suspended Jose Diaz and Sandra Diaz pending an investigation into the charge that they had attempted to steal meat from Excel by use of a stolen receipt.[2] On November 1, 2002, Excel discharged both Jose and Sandra for "attempting to steal Excel Company meat on the night of October 29th." App. at 63-64. When informed of his termination, Jose allegedly reacted violently by attacking an Excel security guard, breaking two of his ribs.
 
 
 4
 The employees' Union, United Food and Commercial Workers, Local 1776 (the "Union"), grieved the terminations by letter dated November 4, 2002. Shawn Mott, Excel's Human Resources Manager, responded to the grievance on November 30, 2002 as follows:
 
 
 5
 [Jose and Sandra] were terminated for their
 
 
 6
 attempted unauthorized removal of Excel meat on the night of October 29th. Our security guard, Bill Rotwa [sic], identified [Jose and Sandra] as the two individuals who attempted to use a stolen receipt to claim meat that was not theirs.
 
 
 7
 As well, [Jose and Sandra's] behavior on November 1 when meeting with me to discuss this matter were [sic] unacceptable with [Jose] hitting a security guard in my office resulting in two cracked ribs.
 
 
 8
 App. at 66.
 
 
 9
 The parties selected an arbitrator to hear the dispute. At the conclusion of the arbitration proceeding, the arbitrator issued his award on May 20, 2004. The arbitrator ruled: The grievance filed on behalf of Jose Diaz and Sandra Diaz is sustained. Based upon the testimony and evidence presented in this case, it is found that the Company did not establish just cause to support termination of the Grievants for "attempting to steal Excel company meat on the night of October 29th." Consequently, the Grievants shall be reinstated to their positions with full seniority and benefits and they shall be made whole for lost wages.
 
 
 10
 App. at 88.
 
 
 11
 As to Excel's contention about the employees' post-termination conduct, the arbitrator stated:
 
 
 12
 The record contains several versions of the Grievants' conduct in the Human Resources office immediately following the notification that they were terminated. In this regard, the Company maintains that the profane, abusive, threatening and violent outbursts of the Grievants constitute independent grounds for termination. However, be that as it may, the Grievants' post-termination conduct is not considered herein as a basis for determining whether the Company had just cause to terminate Jose and Sandra Diaz for "attempting to steal Excel Company meat on the night of October 29th."
 
 
 13
 App. at 85.
 
 
 14
 Instead, the arbitrator confined his award to the issue of "whether the Company had just cause to terminate Jose and Sandra Diaz for `attempting to steal Excel Company meat on the night of October 29th.'" App. at 85. The arbitrator expressly stated that he did not consider the allegation that Jose had attacked an Excel security guard.
 
 
 15
 Because the arbitrator found that the Company did not establish just cause for terminating Jose and Sandra for attempted theft, Excel, by letter dated June 2, 2004, reinstated Sandra with back pay. By separate letter also dated June 2, 2004, Excel informed Jose that, inasmuch as the arbitrator had refused to consider his post-termination conduct on November 1, 2002, it was terminating his employment effective that date. That letter read, in relevant part,
 
 
 16
 Dear Jose,
 
 
 17
 As you know, [the arbitrator] found that the Company lacked just cause to terminate your employment for attempting to steal Excel company meat on the night of October 29, 2002. However, in reaching that decision, the [a]rbitrator did not consider your conduct following your termination on November 1, 2002. Accordingly, please be advised that the Company has decided to terminate your employment effective November 1, 2002, based upon your abusive and violent conduct following your termination, including but not limited to, striking Dennis Peifer, the Director of Security at Excel's Hazleton plant. You will receive back pay from the time that you were suspended pending investigation of the attempted theft through the effective date of your termination, November 1, 2002.
 
 
 18
 App. at 91 (internal quotation marks omitted).
 
 
 19
 In response, the Union filed this suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the May 20, 2004 award. Thereafter, it also filed a second grievance challenging the November 1, 2002 termination.
 
 II.
 
 20
 We have plenary review of the District Court's order. See Beck v. Reliance Steel Prods. Co., 860 F.2d 576, 578 n. 4 (3d Cir.1988).
 
 
 21
 The Union's principal argument on appeal, which subsumes its other arguments, is that the District Court erred in permitting Excel to terminate Jose a second time for his alleged abusive and violent conduct which the arbitrator declined to consider. There is some basis for the Union's implicit contention that the District Court's opinion is contradictory. The District Court stated that Excel had not complied with the arbitrator's initial decision and thus the Court ordered that the arbitration award be enforced "in the manner consistent with [its] Memorandum." However, the Court also preserved Excel's right, after first reinstating Jose, to discharge him again, retroactive to November 1, 2002.
 
 
 22
 The District Court stated, "if appropriate, it will remain for the arbitrator to determine if the employee may have waived his rights; whether Excel may have waived its rights to terminate for the aggressiveness of [Jose], and whether it [was] appropriate to terminate him again and make it retroactive to November 1, 2002—a plausible result. . . . Excel may have the right to terminate [Jose] as of November 1, 2002, if the termination is made after reinstatement and under the same procedures as the first termination for theft." App. at 13.
 
 
 23
 The Union's argument is based on the District Court's statement that Excel violated the arbitral award by failing to reinstate Jose. The award stated, "the Grievants shall be reinstated to their positions with full seniority and benefits and they shall be made whole for lost wages." App. at 88. It is uncontested that after receipt of the award, Excel reinstated Sandra according to the terms of the award. It is also uncontested that Excel awarded Jose back pay from October 31, 2002 (the date of his suspension) to November 1, 2002, the date of Excel's second termination of Jose for his post-termination conduct. Finally, it is uncontested that Excel never put Jose back in the job from which he was terminated on November 1, 2002. The Union thus argues that Excel has sought to evade the arbitral award by failing to reinstate Jose and terminating him a second time for allegedly attacking the security guard. The Union complains that as a result of the District Court's opinion, the arbitrator who will be selected to hear and decide the propriety of Jose's second termination would have the authority not only to uphold that second termination, but to make that termination retroactive to November 1, 2002. It is the Union's position that the effect of such a ruling would be to nullify the arbitral award of May 20, 2004, with its provision for reinstatement.
 
 
 24
 This court has not had occasion to discuss the situation presented by these facts, but other Courts of Appeals, in particular the Seventh, have faced somewhat similar facts. In one of those cases, Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am. AFL-CIO, 2 F.3d 760, 761 (7th Cir.1993), Chrysler discharged a male employee for sexually assaulting a female co-worker. The Union filed a grievance protesting the discharge. Chrysler presented evidence of four other incidents of sexual harassment, but the arbitrator declined to consider them. Id. The arbitrator found in the Union's favor, holding that the penalty against the employee was too severe in light of similar cases. Id. at 761-62. Chrysler sent the employee a letter "which essentially reinstated him for one day with pay and simultaneously dismissed him again." Id. at 762. There were some intervening court proceedings, but ultimately the Union moved the district court to hold Chrysler in contempt for attempting to evade the court's previous order enforcing the arbitral award. Id. The court denied the Union's request and the latter appealed. Id. The Seventh Circuit held that "[w]hen an arbitrator evaluating a discharge examines only the evidence against the employee known to the employer at the time of the discharge, and does not consider evidence against the employee discovered by the employer after the discharge, the employer is not `forever foreclose[d] . . . from using [the] evidence [acquired after the discharge] as the basis for a [subsequent] discharge.'" Id. at 763 (citations omitted). The Court of Appeals pointed out that because the arbitrator refused to consider any evidence beyond the initial harassment, Chrysler had "fresh evidence" to rely upon; "Chrysler's conduct was thus entirely appropriate." Id. at 764.
 
 
 25
 In a subsequent Seventh Circuit case, Auto. Mechs.' Local No. 701 v. Auto Truck, Inc., 171 F.3d 432, 433 (7th Cir. 1999), an employee allegedly defaced company property on April 26, 1994. On April 27, 1994, the day after the incident, the company issued the employee a second absenteeism warning for work missed the previous month. Id. On April 28, 1994, the employer discharged the employee for defacing the property. The Union filed a grievance on behalf of the employee with regard to the discharge, but neither party submitted the absenteeism warning as an issue to be resolved by the arbitrator. Id. On May 10, 1994 the employer prepared a letter stating that the employee had excessive absences in April 1994 and cautioned that "three warning notices in a 12-month period `is cause for suspension or discharge'"; the employee stated that he never received this letter. Id. at 433-34. On May 18, 1994, the employer wrote to the Union's business representative stating that on completion of its attendance review for the month of April, it determined that only one employee exceeded the limit in the month. Id. at 434. The letter stated:
 
 
 26
 The warning notice for [the employee at issue] would have been issued to him except for the fact that he had already been terminated. This . . . would have constituted independent grounds for termination.
 
 
 27
 
 Id.
 
 
 
 28
 The May 18, 1994 letter included a copy of the May 10, 1994 letter. Id. The arbitrator found in the employee's favor on the discharge issue on December 10, 1994 and in so doing emphasized that "his decision did not address the absenteeism issue one way or the other." Id. at 433. In response to the arbitrator's decision, the employer wrote to the employee on January 6, 1995 telling him that it was limiting the award of back pay to the period from April 29, 1994 until May 10, 1994. Id. at 434.
 
 
 29
 The Seventh Circuit began by reaffirming the holding in Chrysler Motors. Id. at 435. The court explained that Chrysler Motors is among the cases establishing the proposition "that an employee who prevails in a labor arbitration with respect to one ground of discharge does not, by that fact alone, acquire life tenure in the position." Id. The court continued,
 
 
 30
 On the one hand, if the undisputed facts showed that a company had an independent valid reason to discharge an employee—perhaps the employee had been caught redhanded stealing company property, or the employee had assaulted another employee—and that the company went through the proper procedures to effect the employee's termination, then the holding in Chrysler Motors indicates that the company could take its chances with a second discharge. If, on the other hand, the facts do not show that independent grounds for discharge existed and that the company actually terminated the employee on the alternate grounds, then the company must comply with the first arbitral award and only take steps afterwards to address any additional infractions the employee may have committed.
 
 
 31
 
 Id.
 
 
 
 32
 However, the court agreed with the district court that the facts did not show that there were independent grounds for discharge. Id. at 436. First, the letter sent to the union representative on May 18, 1994 "never once [said] that [the employee] was terminated;" it merely stated that "the company would have sent him another warning notice, which, when combined with the previous warnings, would have constituted independent grounds for termination." Id. at 436. Second, there was no evidence that the employee received a third warning notice prior to January 6, 1995; "indeed, [the employee] denie[d] receiving anything, and his signature [was] conspicuously missing on the acknowledgment line of the form Auto Truck . . . included in the record." Id. The court stated that these were not trivial omissions. Id. "The entire grievance structure set up by . . . the CBA is premised upon an employee's receiving actual notice of an adverse job action and having the opportunity to move it through the process, up to and including arbitration." Id.
 
 
 33
 The Union relies on Auto Truck for its position that United's second discharge of Jose violated the arbitral decision. However, Auto Truck reaffirmed the legal principles established in Chrysler Motors, but noted that Auto Truck had failed to show that it had sent the employee the required notice, which would have constituted an independent ground for his termination. Id. In fact, the employer had not submitted the independent grounds to the arbitrator. On the other hand, in Chrysler Motors the court found that there were independent grounds for the second termination and therefore Chrysler's decision to reinstate and almost simultaneously terminate the employee was appropriate, subject to the second arbitration.
 
 
 34
 The instant case is more closely analogous to Chrysler Motors than to Auto Truck. The independent grounds for discharge were communicated to Jose and to the Union. In response to the filing of Jose's grievance, Excel's letter to the Union not only referred to Jose's termination for his attempted unauthorized removal of Excel meat but also referred to his behavior on November 1 in "hitting a security guard in [its] office resulting in two cracked ribs." App. at 66. Further, unlike the employer in Auto Truck, Excel submitted information about the independent removal grounds to the arbitrator. The fact that he refused to consider them does not bear on the propriety of Excel's conduct.
 
 
 35
 Admittedly, the court in Chrysler Motors stated that Chrysler's letter "essentially reinstated him for one day with pay and simultaneously dismissed him again," 2 F.3d at 762, whereas Excel's letter to Jose did not use the word "reinstatement." However, Excel undertook to send Jose "back pay from the time that [Jose was] suspended pending investigation of the attempted theft through the effective date of [his] termination, November 1, 2002," App. at 91, and the Union does not claim that Jose did not receive that back pay.
 
 
 36
 Excel's letter served as a de facto reinstatement. There is no reason why the Company should have been required to allow Jose to appear at the work site in order to effect a reinstatement. As the Ninth Circuit has stated, that would be an exercise in futility. See Ass'n of W. Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc., 221 F.3d 1085, 1090 (9th Cir.2000) ("[O]rdering reinstatement for the sole purpose of terminating an employee again `would constitute an exercise in futility' and is not required."); see also McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (holding, in the context of an Age Discrimination in Employment Act case, that "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds").
 
 
 37
 The Union argues that Excel failed to follow the procedure required by Article 18 of the Collective Bargaining Agreement in terminating Jose the second time. We do not reach that issue, as it will be for the arbitrator who will be appointed to consider the second termination. Presumably, the Union will raise the procedure followed at that time.
 
 
 38
 Our holding in United Steelworkers of Am., Dist. 36, Local 8249 v. Adbill Mgmt. Corp., 754 F.2d 138 (3d Cir.1985), is not to the contrary. In Adbill, hotel maids were discharged after violating a work rule that prohibited them from carrying handbags in certain areas of the hotel. Id. at 139. After the case went to arbitration the Hotel stated that it would reinstate the maids in accordance with the arbitral award, but then placed the maids on indefinite layoffs because of a decrease in the Hotel's occupancy rates. Id. at 140. We held that the employer was required to reinstate the grievants in accordance with the arbitration award. Id. at 142. Unlike the situation in Adbill, where the Hotel's decision to reduce its workforce was made after the issuance of the arbitral award, the basis for Jose's second termination occurred before the arbitral decision, and the Union was notified of it before the parties proceeded to arbitration. Therefore, Adbill is not controlling.
 
 
 39
 The Union has expressed concern that our decision today will encourage employers to hold reasons for a second discharge in reserve in order to undermine an adverse arbitration award. Whereas this concern may be valid in some situations, it is inapplicable here in that Excel attempted to place the issue of Jose's attack on the security guard before the arbitrator, who declined to consider it. Cf. Chicago Newspaper Guild v. Field Enters., Inc., Newspaper Div., 747 F.2d 1153, 1157 (7th Cir. 1984) ("[E]ven if Field were able to prove that Miller would have been laid off in March 1978, we would not accept such an argument in this enforcement proceeding because it was not presented to the arbitrator below. The long-established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use the information as a defense to compliance with an adverse award.").
 
 III.
 
 40
 The Union's appeal asks us to enter an Order finding that Excel has not complied with the arbitrator's award. We have explained above why we reject that contention. We also reject Excel's contentions to the extent that they challenge the District Court's decision.
 
 
 41
 Therefore, considering the circumstances of this case, namely the facts that (1) Excel notified Jose that his attack on the security guard was grounds for termination, (2) Excel effectively reinstated Jose as required by the arbitral award by paying him for the period between "the time that [he was] suspended pending investigation of the attempted theft through the effective date of [his] termination[,]", App. at 91, (3) Excel had an independent reason (the attack on the security guard) to terminate Jose and presented that reason to the arbitrator, and (4) the Union has already filed a second grievance pursuant to which a second arbitrator will have the opportunity to rule on the contentions of the parties with respect to notice, waiver, and the existence of good cause for the second termination, we will affirm the District Court's decision.
 
 
 
 Notes:
 
 
 [1]
 The District Court had subject matter jurisdiction pursuant to Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a) and 28 U.S.C. § 1331. This court has jurisdiction from the entry of the District Court's Order pursuant to 28 U.S.C. § 1291
 
 
 [2]
 Excel is now known as Cargill Meat Solutions Corporation