PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1332

FRATERNAL ORDER OF POLICE METRO TRANSIT POLICE LABOR
COMMITTEE, INC.,

Plaintiff - Appellee,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.   Leonie M. Brinkema,
District Judge. (1:12-cv-01387-LMB-JFA)

Argued: January 29, 2015              Decided: March 10, 2015

Before TRAXLER, Chief Judge, and NIEMEYER and MOTZ, Circuit
Judges.

Reversed by published opinion. Judge Motz wrote the opinion, in
which Chief Judge Traxler and Judge Niemeyer joined.

**ARGUED:** Gerard J. Stief, WASHINGTON METROPOLITAN AREA TRANSIT
AUTHORITY, Washington, D.C., for Appellant.   Jonathan G.
Axelrod, BEINS, AXELROD, P.C., Washington, D.C., for Appellee.
**ON BRIEF:** Robert G. Ames, Maggie T. Grace, VENABLE LLP,
Washington, D.C.; Kathryn Pett, General Counsel, Janice L. Cole,
Chief Counsel, Metro Transit Police, WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY, Washington, D.C., for Appellant.   Justin

P. Keating, BEINS, AXELROD, P.C., Washington, D.C., for Appellee.

_____

DIANA GRIBBON MOTZ, Circuit Judge:

This case involves a labor dispute between the Washington Metropolitan Area Transit Authority (WMATA) and the Fraternal Order of Police (FOP). The dispute arose after WMATA fired two of its police officers, reinstated them pursuant to arbitration awards, and then fired the officers a second time after Maryland declined to recertify them as police officers in that state. The district court granted the FOP's motion for summary judgment and ordered WMATA to reinstate the two officers. For the reasons that follow, we reverse.

I.

WMATA, an interstate agency, operates the Metrorail and Metrobus systems in Washington, D.C., Maryland, and Virginia under a compact agreed to by those jurisdictions. The compact authorizes WMATA to employ a police force, the Metro Transit Police Department (MTPD), whose officers enforce the laws of the compact jurisdictions on the Metro system. The FOP is the bargaining agent for MTPD officers and therefore a party to the officers' collective bargaining agreement with WMATA. The agreement permits WMATA to discipline officers only for "just cause" and outlines a four-step grievance procedure for resolving labor disputes, culminating in arbitration.

3

In 2011, WMATA fired two MTPD officers, Mark Spencer and Sherman Benton (collectively "the Officers"). WMATA discharged Officer Spencer for allegedly striking a passenger with his baton and for being untruthful during the subsequent investigation. WMATA fired Officer Benton in the wake of an alleged physical altercation with a female companion in Atlantic City; WMATA determined that he had made false statements during the investigation of the incident and had engaged in conduct that discredited himself and the MTPD.

In response to these terminations, the FOP filed grievances on behalf of the Officers. Both cases reached arbitration, and, in 2012, the Board of Arbitration overturned both discharges. Although the Board found that WMATA had legitimate grounds for disciplining the Officers, the Board concluded that lengthy suspension, not termination, was the appropriate remedy. It ordered WMATA to reinstate the Officers after their respective suspensions.

As a result of their initial terminations, however, the Officers had lost their certifications to serve as police officers in Maryland. Under Maryland law, a police officer must be certified in order to exercise law enforcement powers within the state. Md. Code Regs. § 12.04.01.01(B)(4) (2015). If an officer loses his certification, he must apply for recertification from the Maryland Police Training Commission

4

("Maryland Commission"). Id. § 12.04.01.07(A). Moreover, the WMATA Compact mandates that MTPD officers "shall have the same powers . . . and shall be subject to the same limitations . . . as a member of the duly constituted police force" of the political subdivisions in which WMATA operates. WMATA Compact § 76(b) (2009). The Officers therefore needed to apply for recertification from the Maryland Commission in order to resume police activities for WMATA in Maryland.

Beginning in April (Officer Spencer) and May (Officer Benton) of 2012, WMATA placed the Officers on paid administrative leave while they sought recertification. As part of the recertification process, Maryland law required the MTPD to send the Maryland Commission various materials, including "any derogatory information discovered during the investigation" that led to the firing of the Officers. Md. Code Regs. § 12.04.01.08(D)(2) (2015). Michael Taborn, who was then chief of the MTPD, wrote letters to the Maryland Commission stating, in no uncertain terms, that the MTPD did not favor recertification of the Officers. The record suggests this is the first time that the MTPD has lobbied against recertification in the wake of an arbitration decision ordering an officer's reinstatement. The Maryland Commission denied Officer Spencer's request for recertification in July 2012; it denied Officer Benton's request in August 2012 and subsequently denied his

5

appeal in October 2012. Neither officer sought review of the Commission's decisions in state court. WMATA then discharged the Officers for a second time.

Following these second terminations, the FOP filed grievances on behalf of the Officers. Officer Spencer's grievance was denied at each of the first three steps of the process outlined in the collective bargaining agreement, and the FOP did not request arbitration. Officer Benton's grievance was denied at the first step of the process, and the FOP did not appeal it further. The record does not reveal why the FOP did not continue with the grievance process on behalf of the Officers.

At some point after the Maryland Commission's decisions, the FOP did raise the issue of Officer Benton's lack of recertification with the same Board of Arbitration panel that had ordered his reinstatement.[1] The Board concluded that it was "not within its jurisdiction to determine whether the Grievant meets the requirements to return to work as a WMATA Transit Police Officer." At oral argument before us, the FOP acknowledged that it did not challenge this determination.

---

[1] The record is unclear as to when, and in what procedural posture, the FOP raised this issue with the Board. It is similarly unclear whether the FOP argued before the Board that Officer Benton's second termination was not for just cause.

Instead, the FOP filed this action in federal court on behalf of each officer, alleging that WMATA failed to comply with the 2012 arbitration awards, in violation of both the WMATA Compact and the collective bargaining agreement. The parties filed cross-motions for summary judgment; the district court granted the FOP's motion and denied WMATA's.

Finding no defect in the arbitration awards, and no evidence that the awards were contrary to law or public policy, the district court concluded that WMATA "failed to carry the heavy burden necessary to displace the presumption that arbitral awards are to be enforced as written." Fraternal Order of Police Metro Transit Police Labor Comm., Inc. v. WMATA, No. 12-1387, 2013 WL 3159839, at *10 (E.D. Va. June 20, 2013) ("Summ. J. Op.") (internal quotation marks and citation omitted). Accordingly, the court held that "WMATA breached both the collective bargaining agreement and the Compact by failing to comply with the decisions of the Arbitration Board." Id. at *6. The court ordered WMATA to reinstate Benton and Spencer as Metro Transit Police officers and awarded them back pay and benefits.[2]

---

[2] The parties agreed before the district court that WMATA would return the Officers to pay status and assign them administrative responsibilities during the pendency of this appeal. Fraternal Order of Police Metro Transit Police Labor Comm., Inc. v. WMATA, No. 12-1387, 2014 WL 1317672, at *1 (E.D. Va. Mar. 27, 2014). At oral argument before us, WMATA informed the court that Officer Spencer retired in September of 2014. (Continued)

7

The court subsequently denied WMATA's motion for reconsideration. Fraternal Order of Police Metro Transit Police Labor Comm., Inc. v. WMATA, No. 12-1387, 2014 WL 1317672, at *1 (E.D. Va. Mar. 27, 2014) ("Recons. Op."). WMATA then noted this timely appeal.

## II.

WMATA advances several arguments on appeal, but its principal contention is that the district court erred in holding that it failed to comply with the Board of Arbitration's awards. WMATA maintains that it complied with the awards by placing the Officers on paid administrative leave pending their recertification. It further contends that, in an action seeking to enforce the arbitration awards, the FOP cannot challenge the Officers' second terminations, i.e., those resulting from the Maryland Commission's denial of recertification. Instead, WMATA argues, the FOP needed to use the grievance procedure outlined in the collective bargaining agreement to contest the second terminations. We agree.

"We review a district court's decision to grant summary judgment de novo," and we view "all facts and reasonable

---

The claims brought on his behalf are not moot, however, because the disposition of this case could affect the district court's award of back pay.

inferences therefrom in the light most favorable to the nonmoving party." T-Mobile Ne. LLC v. City Council of Newport News, 674 F.3d 380, 384-85 (4th Cir. 2012) (internal quotation marks and citation omitted). Under the federal common law of arbitration, which applies to labor disputes involving WMATA, a court can decline to enforce an arbitration award only on narrow grounds. See Office & Prof'l Emps. Int'l Union, Local 2 v. WMATA, 724 F.2d 133, 139-40 (D.C. Cir. 1983).[3] We need not examine any of those grounds here, however, because the question in this case is not whether the arbitration awards are valid -- the parties do not dispute that the Board of Arbitration had the power to order WMATA to reinstate the discharged officers and that the awards were valid when issued. Rather, the question is whether WMATA complied with the awards.

The FOP recognizes that WMATA initially complied with the arbitration awards. For, at oral argument before us and before the district court, the FOP acknowledged that placing the Officers on paid administrative leave constituted at least temporary reinstatement. The question, then, is whether

---

[3] Those grounds include that the award was "arbitrary and capricious" or not "sufficiently definite to allow enforcement." Office & Prof'l Emps. Int'l Union, 724 F.2d at 140. A court may also decline to enforce an arbitration award if "the arbitrator exceeded the scope of his jurisdiction" or if the award "is contrary to law or explicit public policy." Id. (internal quotation marks and citation omitted).

9

terminating the Officers after the Maryland Commission denied recertification constitutes non-compliance with the arbitration awards.

Neither the parties nor the district court cite any legal authority that speaks directly to this question. Two of our sister circuits, however, have decided cases with similar procedural histories -- i.e., where an employee has been terminated, ordered reinstated by an arbitrator, and then terminated again for an independent reason. The court in each case held that the employee cannot challenge the second termination through an action seeking enforcement of the arbitration award.

In Chrysler Motors Corp. v. International Union, Allied Industrial Workers, 2 F.3d 760 (7th Cir. 1993), the Seventh Circuit upheld Chrysler's decision to fire an employee shortly after he had been reinstated pursuant to an arbitration award. The employee had initially been discharged for a single act of sexual harassment. Id. at 761. The arbitrator, however, determined that the incident warranted only a suspension and ordered Chrysler to reinstate the employee. Id. at 761-62. During its investigation of the incident, however, Chrysler learned that the employee had engaged in additional prior acts of sexual harassment. Id. at 761. But the arbitrator did not consider any of those prior acts in reaching his decision to

10

order reinstatement. Id. Chrysler therefore reinstated the employee for one day and then terminated him again, citing the additional acts of sexual harassment. Id. at 762.

In holding that Chrysler's action did not violate the arbitration award, the Seventh Circuit emphasized that arbitration awards do not prevent an employer from taking future disciplinary action when confronted with new facts. Id. at 763. The court explained that if an arbitrator's decision "does not consider evidence against the employee discovered by the employer after the discharge," then the employer "is not 'forever foreclose[d] . . . from using [the] evidence [acquired after the discharge] as the basis for a [subsequent] discharge.'" Id. (quoting United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 41 (1987)) (alterations in original).

Relying on the Seventh Circuit's decision in Chrysler Motors, the Third Circuit has also held that an employer can discharge an employee, after reinstatement, based on facts not considered by the arbitrator. United Food & Commercial Workers Union Local 1776 v. Excel Corp., 470 F.3d 143, 146-49 (3d Cir. 2006). In United Food, two employees, Jose and Sandra Diaz, had been suspended pending an investigation into allegations that they attempted to steal from their employer. Id. at 144. A day later, the employees were fired. Id. When the employees were

11

told they were being discharged, Jose Diaz allegedly attacked a security guard. Id.

The employees proceeded to challenge their terminations in arbitration, and the arbitrator overturned the employer's decision and ordered reinstatement and back pay. Id. at 144-45. The arbitrator made clear, however, that he had not considered the allegations surrounding Jose Diaz's attack on the security guard in reaching his decision. Id. at 145. The employer therefore reinstated Sandra Diaz, but informed Jose Diaz that he was (again) terminated, effective from the date of his alleged assault. Id. The Third Circuit held that the employer's actions did not violate the arbitration award. Id. at 144. The court explained that, in light of Jose Diaz's violent conduct, the employer was "free to terminate the employee a second time based on independent grounds, pending a second arbitration." Id.[4]

---

[4] In United Food, the court distinguished United Steelworkers, District 36, Local 8249 v. Adbill Management Corp., 754 F.2d 138, 140 (3d Cir. 1985)), where although a hotel purported to comply with an arbitrator's award to reinstate nine maids, it immediately placed the maids on indefinite layoffs because of "low occupancy." Adbill held that the hotel's action conflicted with the language of the arbitration award, which "clearly require[d]" returning the maids to actual duty. Id. at 142. United Food distinguished Adbill on the ground that there, the employer's "decision to reduce its workforce was made after the issuance of the arbitral award," while in the case before it the basis for the "second termination occurred before the arbitral decision." United Food, 470 F.3d at 149 (emphasis in (Continued)

12

Like the employers in Chrysler Motors and United Food, WMATA relied on independent grounds that were never before the arbitrators when they terminated Officers Spencer and Benton for a second time. The Maryland Commission's denial of the Officers' request for recertification created a new and independent basis for deciding that Spencer and Benton could no longer serve as MTPD officers. Firing a police officer for a disciplinary infraction is distinct from firing an officer for failing to obtain recertification. And as in Chrysler Motors and United Food, the basis for the second termination was never before the arbitrators. Nothing in the record suggests that the Board of Arbitration considered, or was even aware of the possibility, that the Maryland Commission would deny recertification. We therefore hold that WMATA's decision to terminate the Officers for a second time, following the Maryland Commission's denial of recertification, did not violate the earlier arbitration awards.[5]

---

original). To the extent the holding in United Food rested on this temporal distinction, we decline to adopt it. In our view, truly independent grounds for terminating an employee can arise before or after an arbitrator has heard the employee's case. That is, the independent grounds are genuinely outside the scope of what was before the arbitrator.

[5] Given the facts here, we need not decide precisely how independent the reason for a second termination must be in order to fall outside the scope of an action seeking to enforce an
(Continued)

13

We recognize that WMATA actively sought to influence the Maryland Commission by writing letters strongly discouraging recertification of the Officers. The district court noted that in reviewing ten years of disciplinary actions, it found no other case where the MTPD had employed "the type of strong, negative rhetoric used by Chief Taborn in his letters to the Maryland Commission concerning Benton and Spencer." Recons. Op., 2014 WL 1317672, at *4. The court determined that this amounted to "strong evidence of WMATA's intention to not comply with the arbitration awards by creating a condition that it could then use to justify not reinstating these officers." Id. (emphasis added). And for this reason the court held that WMATA had not complied with the arbitration awards.

WMATA's involvement in the recertification process does add an element to this case not present in either Chrysler Motors or United Food. But whatever WMATA's intentions, nothing in the record permits a holding that WMATA's actions violated the terms of the arbitration awards. WMATA was permitted -- in fact, obligated -- to forward to the Maryland Commission "any

---

arbitration award that orders reinstatement. Moreover, the FOP has not claimed that WMATA's reliance on the Maryland Commission's denial of reinstatement was pretextual. Accordingly, we need not determine under what circumstances a court could find that an allegedly independent reason was actually pretextual.

14

derogatory information" about the Officers' terminations. Md. Code Regs. § 12.04.01.08(D)(2). To be sure, Chief Taborn was particularly zealous in carrying out that duty in this instance -- maybe to a fault. But the decision whether to recertify the Officers belonged solely to the Commission, which was no rubber stamp for WMATA's wishes. To the contrary, the transcripts of the Commission's hearings indicate that the Commission exercised independent and considered judgment in evaluating the information WMATA supplied. In fact, two commissioners in Officer Spencer's case voted in favor of recertification.

Even if WMATA did provide "derogatory information" with the express hope or intent that the Maryland Commission would not recertify the Officers, we cannot conclude that WMATA exceeded the bounds of permissible behavior under the arbitration awards. The FOP has cited no authority that would permit us to reach that conclusion. Instead, the FOP begins from the premise that the arbitration awards prohibited WMATA's conduct toward the Officers and then proceeds to explain why the awards are valid. But again, no party disputes that the awards were valid when issued. By defending the validity of the arbitration awards at great length, but failing to address the applicability of the awards to the actions WMATA took after they were issued, the FOP assumes away the central question in this case.

At best, the FOP has provided reasons for questioning whether WMATA's second termination of the Officers was for "just cause." The FOP might be right on that front. Although we hold that there were independent grounds for terminating the Officers a second time, and thus that the second terminations did not violate the <u>arbitration awards</u>, we do not decide whether those grounds were adequate under the <u>collective bargaining agreement</u>. Nor could we; such a decision would be beyond our jurisdiction. The WMATA Compact is clear that arbitration is the appropriate method for resolving "any labor dispute," including "the interpretation or application of . . . collective bargaining agreements and any grievance that may arise." WMATA Compact § 66(c) (2009). Interpreting the "just cause" language of the collective bargaining agreement falls squarely within this provision.

Accordingly, the Officers' grievances belong before the Board of Arbitration, not a federal court.[6]

---

[6] Because we hold that the FOP cannot challenge WMATA's second termination of the Officers in this action seeking enforcement of the arbitration awards, we decline to reach WMATA's alternate bases for reversal, except to note, as the district court held, that WMATA does not have immunity from suit here. <u>See</u> Summ. J. Op., 2013 WL 3159839, at *7-8. The FOP has alleged a breach of its collective bargaining agreement with WMATA, and WMATA enjoys no immunity from such suits. <u>See</u> <u>Beebe v. WMATA</u>, 129 F.3d 1283, 1289 (D.C. Cir. 1997) ("Section 80 of the Compact waives WMATA's sovereign immunity for contractual disputes.").

III.

Our conclusion that WMATA did not violate the arbitration awards does not mean we necessarily embrace WMATA's behavior. Like the district court, we are troubled by evidence that WMATA handled these cases in a markedly different fashion from previous employment disputes. See Recons. Op., 2014 WL 1317672, at *4. Of course, there may be legitimate reasons for this difference. In any event, our view of WMATA's tactics does not alter our conclusion that we lack authority to decide whether these actions by WMATA breached the collective bargaining agreement. The grievance procedure outlined in that agreement provides the only proper forum for resolving the Officers' claims.

For the foregoing reasons, the judgment of the district court is

REVERSED.