# United States Court of Appeals
# for the Federal Circuit

---

**HOSSEIN MOHSENZADEH,**
*Plaintiff-Appellant*

v.

**MICHELLE K. LEE, DIRECTOR, U.S. PATENT AND
TRADEMARK OFFICE, DEPUTY UNDER
SECRETARY OF COMMERCE FOR
INTELLECTUAL PROPERTY AND DEPUTY
DIRECTOR OF THE UNITED STATES PATENT
AND TRADEMARK OFFICE,**
*Defendant-Appellee*

---

2014-1499

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:13-cv-00824-GBL-TCB, Judge Gerald Bruce Lee.

---

Decided: June 25, 2015

---

MICHAEL OAKES, Hunton & Williams LLP, Washington, DC, for plaintiff-appellant. Also represented by JEFFREY B. VOCKRODT.

DANA KAERSVANG, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by MARK

R. FREEMAN; ANTONIA KONKOLY, Office of the United States Attorney for the Eastern District of Virginia, Alexandria, VA; BRIAN THOMAS RACILLA, MEREDITH HOPE SCHOENFELD, NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

_____

Before MOORE, SCHALL, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Hossein Mohsenzadeh appeals the district court's entry of summary judgment in favor of the government on the issue of whether the United States Patent and Trademark Office ("PTO") properly calculated patent term adjustments for two patents that issued from divisional applications. Because we find that the district court did not err in affirming the PTO's denial of Mohsenzadeh's requests for patent term adjustments, we *affirm.*

## I. BACKGROUND

### A. PATENT TERM ADJUSTMENTS

The patent term adjustment statute, 35 U.S.C. § 154, has two provisions restoring patent term to patentees for delays attributable to the PTO that occur prior to the issuance of a patent. "A Delay" refers to the PTO's failure to timely take certain actions or provide certain notices to the patentee. 35 U.S.C. § 154(b)(1)(A). "B Delay" refers to the PTO's failure to issue a patent within three years of the actual filing date of the application. *Id.* § 154(b)(1)(B). The statute requires the agency to extend the term of the patent by one day for each day the issuance of a patent is delayed under either section 154(b)(1)(A) or (B).

This appeal concerns only A Delay. The relevant statutory provision, 35 U.S.C. § 154(b)(1)(A), requires that a notice be sent to the applicant within 14 months of the

date of filing a domestic application or the start of the national stage of an international application:

> [I]f the issue of an original patent is delayed due to the failure of the Patent and Trademark Office to—
>
>> (i) provide at least one of the notifications under section 132 or a notice of allowance under section 151 not later than 14 months after—
>>
>>> (I) the date on which an application was filed under section 111(a); or
>>>
>>> (II) the date of commencement of the national stage under section 371 in an international application
>>> . . .

*Id.* § 154(b)(1)(A). Included among the types of notices due under section 132 is the notice of a restriction requirement.

The impact of a late-mailed restriction requirement forms the basis of this appeal. When an application is filed with claims drawn to multiple inventions, the PTO may issue a restriction requirement, which requires the applicant to elect to prosecute only one of the inventions as part of that application. 35 U.S.C. § 121. For the remaining inventions, the applicant may file a divisional application, which entitles the invention in the divisional application to the benefit of the filing date of the original application. *Id.*

After a patent is granted, the Director of the PTO must issue a patent term adjustment that adds one day of patent term for each day of A or B Delay attributable to the PTO. 35 U.S.C. 154(b)(1)(A). The adjustment is statutorily reduced for delays attributable to the applicant's unreasonable prosecution efforts:

> The period of adjustment of the term of a patent . . .
> shall be reduced by a period equal to the period of
> time during which the applicant failed to engage in
> *reasonable efforts* to conclude prosecution of the ap-
> plication.

35 U.S.C. § 154(b)(2)(C)(i) (emphasis added).  The statute
instructs the PTO to "prescribe regulations establishing
the circumstances that constitute a failure of an applicant
to engage in reasonable efforts to conclude processing or
examination of an application."  *Id.* § 154(b)(2)(C)(iii).

### B. MOHSENZADEH'S PATENT APPLICATIONS

Mohsenzadeh filed Application No. 09/899,905 (" '905
application") on July 6, 2001.  The '905 application in-
cluded 58 claims.  Though the 14-month notification
period of 35 U.S.C. § 154(b)(1)(A) ended on September 6,
2002, the PTO did not notify Mohsenzadeh that the '905
application was subject to a restriction requirement until
September 21, 2006.  The restriction requirement includ-
ed four groupings of claims, each corresponding to a single
invention.  In response to the restriction requirement,
Mohsenzadeh elected to prosecute claims 1–21 and 51–58.
At that point, the non-elected claims were cancelled via
examiner amendment.

The claims Mohsenzadeh elected to prosecute issued
on June 22, 2010 as U.S. Patent No. 7,742,984 (" '984
patent").  When the patent issued, the PTO granted a
patent term adjustment of 2,104 days for the '984 patent.
That figure includes 1,476 days of A Delay attributable to
the delay occurring between September 6, 2002 and
September 21, 2006, i.e., the time between when notice
was due and when the PTO actually provided notice of the
restriction requirement.

Mohsenzadeh filed two divisional applications from
the '905 application on January 8, 2010.  Each divisional
application corresponded to a group of claims identified as

a separate invention in the original restriction require-ment. Both applications issued as patents. The first, U.S. Patent No. 8,352,362 ("'362 patent"), issued on January 8, 2013, and the second, U.S. Patent No. 8,401,963 ("'963 patent"), issued on March 19, 2013. Both patents claim priority to the '984 patent. The PTO granted 0 days of patent term adjustment for both the '362 and '963 patents.

C. MOHSENZADEH'S CHALLENGES TO TERM ADJUSTMENTS

Pursuant to agency regulations, Mohsenzadeh re-quested reconsideration of the patent term adjustments for both the '362 and '963 patents. He argued that each patent was entitled to the 1,476 days that the PTO de-layed in issuing the restriction requirement for the '984 patent. The PTO denied both requests, reasoning that 37 C.F.R. § 1.704(c)(14) provides that when prosecution occurs via a continuing application, any delays arising prior to the actual filing date of the application will not apply to the application that results in the patent.

Mohsenzadeh filed an action challenging the denials of his reconsideration requests under 35 U.S.C. § 154(b)(4)(A), which provides applicants a remedy in the form of a civil action against the Director of the PTO in the Eastern District of Virginia. The government moved for summary judgment, principally arguing that the repeated use of singular nouns throughout § 154(b)(1)(A)—"an original patent," "an application"—followed by instructions on extending the term of "the patent" shows that an applicant "is entitled to 'A delay' only for the patent that yielded from the initial applica-tion." J.A. 687–88. The district court granted the gov-ernment's motion for summary judgment on two grounds. First, the court held that 35 U.S.C. § 154 unambiguously requires that a patent term adjustment apply for delays that occurred during prosecution of the actual application from which the patent directly issued, not the application

from which it derived priority. Second, the court held that the PTO's interpretation of 35 U.S.C. § 154 was "reasonable and entitled to some deference." The court then entered final judgment in favor of the government.

Mohsenzadeh appeals from the grant of summary judgment to the government. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

Both Mohsenzadeh and the government focus their arguments on the text of 35 U.S.C. § 154. Mohsenzadeh argues that the statute was enacted to adjust the terms of all patents impacted by delays caused by the PTO. Mohsenzadeh contends this is shown by the language of the statute, which considers the delay caused to the issuance of "an original patent" based on the PTO's failure to provide certain notifications within 14 months of the date on which "an application" was filed. 35 U.S.C. § 154(b)(1)(A)(i)(I). He relies on the sequence of the pronouns in the following excerpt of the statute:

> if the issue of ***an original patent*** is delayed due to the failure of the Patent and Trademark Office to—
>
>> (i) provide at least one of the notifications under section 132 or a notice of allowance under section 151 not later than 14 months after—
>>
>>> (I) the date on which ***an application*** was filed under section 111 (a); or
>>>
>>> (II) the date of commencement of the national stage under section 371 in ***an international application***;
>>
>> . . .
>
> the term of ***the patent*** shall be extended 1 day for each day [of delay]

35 U.S.C. § 154(b)(1)(A) (emphases added). Mohsenzadeh claims that delays in the issuance of "an original patent," here each of the '362 and '963 patents, was caused by delays in providing notice for "an application," here the '905 application. Thus, the consecutive uses of the indefinite article "an"—before "original patent" and "application"—allows delays in the prosecution of one patent to be counted in the patent term adjustment of more than one patent.

The government responds by arguing that 35 U.S.C. § 154(b)(1)(A) does not contemplate parent and continuing applications through use of the terms "an original patent" and "an application," but rather one single application. The government points out that Congress expressly referred to both "applications" (i.e., continuing applications) and "earlier filed applications" (i.e., parent applications) in § 154(a)(2).[1] This, the government contends, undermines Mohsenzadeh's contention that Congress intended to impute delays from the prosecution of a parent application to any continuing applications deriving therefrom. The government also argues that the history of amendment of § 154(b)(1)(A)(i) confirms that Congress was referring to a single application throughout. Earlier drafts of the statute only provided a deadline for issuing a notice as to an application filed under section 111(a), at which time the definite article was used: "the application was filed under section 111(a)." When the statute was amended to include notice for international applications

---

[1] The relevant language from this statutory section provides that "if the *application* contains a specific reference to an *earlier filed application or applications* under section 120, 121, or 365(c)," i.e., if the application is a continuing application, the 20-year patent term will begin to run "from the date on which the earliest such application was filed." 35 U.S.C. § 154(a)(2) (emphases added).

in § 154(b)(1)(A)(ii), the indefinite article was used in both provisions to indicate alternative types of applications that would be subject to the notification proceeding. The government separately argues that the PTO did not act arbitrarily or capriciously in promulgating 37 C.F.R. § 1.704(c)(14),[2] which states:

> (14) Further prosecution via a continuing application, in which case the period of adjustment . . . shall not include any period that is prior to the actual filing date of the application that resulted in the patent.

## A. STANDARD OF REVIEW

We review a district court's grant of summary judgment under the law of the regional circuit, in this case the Fourth Circuit. *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1303 (Fed. Cir. 2012). The Fourth Circuit reviews the grant of summary judgment de novo, "viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Fraternal Order of Police Metro Transit Police Labor Comm., Inc. v. Wash. Metro. Area Transit Auth.*, 780 F.3d 238, 241 (4th Cir. 2015). Similarly, we review questions of pure statutory interpretation without deference to the district court. *AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1353 (Fed. Cir. 2007).

---

[2]    At the time Mohsenzadeh instituted this case, the quoted regulation was paragraph 12. Subsequently, the regulation was amended twice, resulting in the relevant paragraph being renumbered to 14. The district court order from which the appeal was taken and Mohsenzadeh's brief refer to paragraph 12. The government's brief refers to paragraph 13. We refer to paragraph 14 to aid reference to the current numbering.

B. THE STATUTE'S PLAIN LANGUAGE
RESOLVES THE DISPUTE

The language of the provision of the patent term adjustment statute at issue, 35 U.S.C. § 154(b)(1)(A), clearly shows that Congress intended delay in the prosecution of an application to be restored to a single patent, the patent issuing directly from that application. In other words, the term of any patent arising from a continuing application is not restored for delay in the prosecution of the parent patent's application.

The statute's reference to "an original patent" and later to "an application" does not conclusively show that Congress intended the provision to refer to multiple applications merely because it used "an" in the second instance instead of "the." Had Congress intended for the period of delay during prosecution of a parent application to be restored for all continuing applications deriving from it, it would have done so expressly. We need only look to the previous subsection of the same statute to find an example of express congressional intent to address the relationship between parent applications and continuing applications, 35 U.S.C. § 154(a)(2). In § 154(a)(2), Congress provided that the term of a patent arising from a non-continuing application should end "20 years from the date on which the application for the patent was filed." In that same subsection, Congress specified that for an application that "contains a specific reference to an earlier filed application or applications under section . . . 121," i.e., a divisional application, the term ends 20 years "from the date on which the earliest such application was filed." *Id.* Congress' intent that the statute clearly address both parent and continuing applications, where necessary, suggests that Congress did not provide patent term adjustments in continuing applications based on delays in the prosecution of parent applications in § 154(b)(1)(A). *See generally Bates v. United State*s, 522 U.S. 23, 29-30 (1997) (noting that Congress acts intentionally where it

"includes particular language in one section of a statute but omits it in another section"); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) (same).

As the government argues, Congress' insertion of the provision governing international applications in § 154(b)(1)(A)(ii) when it amended the statute in 2000 also signifies that Congress did not intend for patent term adjustments in continuing applications to be made for delays in parent applications. A previous version of the bill addressed only adjustments to domestic applications, referring to "***the*** application" in § 154(b)(1)(A)(i). H.R. Rep. No. 106-287, at 105 (1999) (Comm. Rep.) (emphasis added). Congress revised the bill so as to address adjustments to patents arising out of both domestic applications, in § 154(b)(1)(A)(i)(I), and international applications, in § 154(b)(1)(A)(i)(II). When it did so, it used the indefinite article "an" before the word "application" in both §§ 154(b)(1)(A)(i)(I) and (II). H.R. Rep. No. 106-464, at 48 (1999) (Conf. Rep.). This later version was identical to the final text of § 154(b)(1)(A)(i). The indefinite article, thus, appears not to allow for reference to a different application than the one ripening into "an original patent," but simply to signify Congress' adjustment of the statute to account for the fact that a patent may arise either from a domestic application or an international application. Because we hold that the plain language of § 154(b)(1)(A) shows that Congress did not intend to provide patent term adjustments in continuing applications based on delays in the prosecution of parent applications, it is not necessary to reach whether 37 C.F.R. § 1.704(c)(14) is a proper exercise of the PTO's delegated rule making authority under 35 U.S.C. § 154(b)(2)(C)(iii).

## CONCLUSION

Because the plain language of 35 U.S.C. § 154(b)(1)(A) does not provide patent term adjustments in continuing

applications based on delays in the prosecution of parent applications, we *affirm* the judgment of the district court.

**AFFIRMED**

Costs

No costs.